REYNA, Circuit Judge,
dissenting.
I respectfully dissent. The plain meaning of the claim language of the '325 patent reads on Bettcher’s own prior art products, which include all of the structural features required by the claims, and which possess the capability of satisfying the functional or intended use limitations. As the '325 patent is therefore invalid for anticipation as a matter of law, I would reverse the district court and not reach the other issues presented in this appeal.
I. Background
The '325 patent is directed to a rotary knife blade as is commonly used for trim *650 ming or processing meat. Rotary knife blades are essentially ring-shaped blades mounted within a housing on a knife handie, where the housing includes a mechanism that spins the blade within the housing:
[[Image here]]
The blade includes an annular groove called a bearing race that enables one or more bearing beads within the housing to engage and support the blade, ensuring that there is no axial movement of the blade during rotation.
[[Image here]]
The particular embodiment of patented rotary knife blade disclosed in the speeification is depicted with the following cross-sectional view:
*651 [[Image here]]
The bearing race is generally indicated by reference numeral 66, and the first and second bearing surfaces are indicated by reference numerals 70 and 72. These bearing surfaces are characterized as being “frustoconical,” which the district court defined as “the shape of a portion of an exterior surface of a cone.”
Claim 1 of the '325 patent is representative, and recites that the bearing race comprises the following four elements:
(1) “a first surface that converges proceeding away from said second axial end”
(2) “a second surface that converges proceeding toward said first surface”
(3) “said first and second surfaces defining first and second bearing faces spaced axially apart”
(4) “wherein both of said bearing faces are frustoconical.”
Importantly, aside from indicating the directions in which the first and second frustoconical bearing faces extend, the claims do not recite any particular length or size of those surfaces.
The prior art included blades previously made and sold by Bettcher, the so-called “pre-1998 blades.” The parties do not dispute that the pre-1998 blades satisfied the claim elements of “a first surface that converges proceeding away from said second axial end,” “a second surface that converges proceeding toward said first surface,” those surfaces being “spaced axially apart,” and that the two surfaces are “frustoconical.” The only dispute is whether the first surface and second surface of the pre-1998 blades “definfe] first and second bearing faces,” as recited by the claims. The following demonstrative juxtaposition of the patented blade and the pre-1998 blades is an accurate representation of the blades and the key surfaces at issue:
*652 [[Image here]]
'325 Patented Blade Pre-1998 Blades
The two converging surfaces in the pre1998 blades were regarded as “chamfers.” The chamfers were intended to provide clearance with mating parts, not to be used as bearing surfaces to engage the bearing beads in the knife housing. No commercial knife housing was shown to have existed at the time that would have used the chamfers as bearing surfaces. It was nevertheless possible for the chamfers to function as bearing surfaces. This possibility was evidenced by a mock-up housing created by Bunzl’s expert and used at trial to rotate, for a few minutes, a prior art blade using the chamfers as bearing surfaces. Thus, Bunzl argues that the chamfers in the prior art blades satisfy the “bearing face” limitations because “[w]hether called chamfers, or any other name, the fact remains that the frustoconical surfaces were capable of serving as bearing surfaces.” Bunzl Reply Br. at 6.
The mock-up housing used stainless steel balls to engage the chamfers, and the blade was rotated using a standard variable speed power drill. This housing was admittedly not designed to simulate ordinary use conditions in an actual knife housing, but merely to determine whether it was possible to rotate a pre-1998 blade by its chamfers within a housing, which it succeeded in doing. Bettcher’s expert conceded that the mock-up housing did in fact work to rotate the blade by the chamfers, but questioned its practical efficacy noting that “[h]ow long it lasts, whether it’s functional, those are other issues.” A2028:8-16. Bettcher’s expert further testified that because the chamfers were so small, using them as bearing surfaces would cause them to dig into the mating parts within the housing. Thus, Bettcher argues that the chamfers cannot be deemed capable of serving as bearing surfaces for a rotary knife blade.
II. Anticipation
Under 35 U.S.C. § 102, anticipation exists when a single piece of prior art satisfies, either expressly or inherently, every limitation of the claimed invention. King Pharms., Inc. v. Eon Labs, Inc., 616 F.3d 1267, 1274 (Fed.Cir.2010). “Claim language defines claim scope,” and so the claims must be properly construed for comparison to the allegedly anticipatory prior art. Trintec Indus, v. Top-U.S.A. Corp., 295 F.3d 1292, 1294 (Fed.Cir.2002).
*653 There is no actual dispute here concerning whether the structural limitations of the claims are met by the pre-1998 blades — they are. The “first surface” and “second surface” in the pre-1998 blades “converge” toward each other, they are “spaced axially apart,” and they are “frustoconieal” exactly as defined in the claims. Although the claims recite that the first and second surfaces “defin[e] first and second bearing surfaces,” this limitation does not further limit the structure of the claimed blade. The exact shapes, positions, contours, and configurations of the first and second surfaces are completely defined elsewhere in the claims. The claims merely mention that those first and second surfaces happen to “defin[e] first and second bearing faces.” In essence this limitation does nothing more than give a name to the first and second surfaces: “bearing faces.” Admittedly, the word “bearing” carries some meaning, but that meaning is not structural. At most, the “defining” limitation is an indication of an intended use or function of the first and second surfaces — that they be used to engage one or more bearing beads.
None of Bettcher’s arguments directed to the efficacy of using the chamfers as bearing surfaces have any relation to the claim language at issue. The claims are directed to “a rotary knife blade” and cover the product only, not any particular use of it. Indeed, no characteristics of the knife housing in which the blades are intended to be used are reflected in the claims. There are no limitations regarding how fast the blade must be able to be spun, or for how long the blade must be able to sustain rotation at any particular speed. The claims also do not recite any particular width, contour, or positioning of the first and second surfaces such that they can engage with bearing beads of then-existing knife housings. They recite only that the converging surfaces be “spaced axially apart” and “frustoconical.” No structural details as to the interior shape of the bearing race between two opposing bearing surfaces are required by the claims, and in effect the '325 patent encompasses any blade that looks like this:
[[Image here]]
Absent further limitations directed at least to the length or size of the frustoconical surfaces, there is no patentable distinction between the claimed blade and the pre1998 blades. The claim language plainly reads on the chamfers of the pre-1998 blades.
Turning to Bettcher’s contention that the chamfers cannot be bearing surfaces because they were not recognized or used as such at the time, this court’s decision in In re Schreiber, 128 F.3d 1473, 1477-78 (Fed.Cir.1997) is both instructive and controlling. There, a claim directed to a popcorn dispensing spout was found anticipated by a prior art patent directed to a spout for dispensing oil. The claim at issue included both structural elements and functional elements. Id. at 1475. There was no dispute that the structural limitations of the claim were all met by the prior art oil spout. Id. at 1477 (“[The prior art] discloses a ‘dispensing top’ that has ‘a gener *654 ally conical shape and an opening at each end,’ and ‘means at the enlarged end of the top to embrace the open end of the container, the taper of the top being uniform.’ ”). Rather, Schreiber relied on the functional elements of the claim to establish patentability, arguing that the prior art oil spout patent “does not disclose that such a structure can be used to dispense popcorn from an open-ended popcorn container.” Id. at 1477; see also id. at 1475 (claim providing, for example, that “the opening at the reduced end allows several kernels of popped popcorn to pass through at the same time”).
The court explained that “choosing to define an element functionally, i.e., by what it does, carries with it a risk” in that “a functional limitation asserted to be critical for establishing novelty in the claimed subject matter may, in fact, be an inherent characteristic of the prior art.” Id. at 1478 (quoting In re Swinehart, 58 CCPA 1027, 439 F.2d 210, 212 (1971)). To find that a claim element is inherently disclosed in the prior art, it must necessarily be present in the prior art. King Pharms., 616 F.3d at 1274. Because the oil spout in Schreiber was “capable of’ dispensing popped popcorn in the manner set forth in the claim, it inherently satisfied all of the functional limitations and anticipated the claimed popcorn spout. 128 F.3d at 1478-79. As the court explained, “Schreiber’s contention that his structure will be used to dispense popcorn does not have patentable weight if the structure is already known, regardless of whether it has ever been used in any way in connection with popcorn.” Id. at 1477.
As in Schreiber, here all structural limitations recited in the claims are found in the prior art blades. Id. at 1477. The only allegedly distinguishing aspect of the claimed rotary blades is that certain surfaces therein are said to “defin[e] first and second bearing faces,” i.e., they are intended to be used to engage the bearing beads within the knife housing. Under Schreiber, this distinction is not a patentable one. It is undisputed that the chamfers of the pre-1998 blades could function as bearing faces, as demonstrated by the mock-up used at trial. No recognition of such capability in the prior art is required. Schering Corp. v. Geneva Pharmaceuticals, Inc., 339 F.3d 1373, 1377 (Fed.Cir.2003) (“[Tjhis court rejects the contention that inherent anticipation requires recognition in the prior art.”); In re Cruciferous Sprout Litig., 301 F.3d 1343, 1349 (Fed.Cir.2002) (“Inherency is not necessarily coterminous with knowledge of those of ordinary skill in the art. Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art.” (quotations omitted)). Each chamfer inherently satisfies the “bearing face” limitation “regardless of whether it has ever been used in any way in connection with [a bearing].” Schreiber, 128 F.3d at 1477.
Where all structural elements of a claim exist in a prior art product, and that prior art product is capable of satisfying all functional or intended use limitations, the claimed invention is nothing more than an unpatentable new use for an old product. Schreiber, 128 F.3d at 1477.
III. Conclusion
No reasonable jury could conclude that the claims of the '325 patent were novel over the pre-1998 blades because none of the dispositive facts were disputed and the law is clear. I would reverse the district court and enter judgment as a matter of law of anticipation.