**3M COMPANY, and 3M Innovative Properties Company, Plaintiffs,**

v.

**MOLDEX–METRIC, INC., Defendant.**

**Civil File No. 03–5292 (MJD/AJB).**

United States District Court, D. Minnesota.

July 10, 2009.

Juanita R. Brooks, John C. Adkisson and Sara Cotton, Fish & Richardson P.C. and Hildy Bowbeer and Karl G. Hanson, Of Counsel, 3M Innovative Properties Company, for Plaintiffs.

Victor deGyarfas, William J. Robinson, Allen A. Arntsen and Stephan J. Nickels, Foley & Lardner, LLP, Harold A. Barza and Joseph M. Paunovich, Quinn Emanuel Urquhart Oliver & Hedges LLP and Edward M. Laine and David A. Prange, Oppenheimer Wolff & Donnelly LLP, for Defendant.

## MEMORANDUM OPINION AND ORDER

MICHAEL J. DAVIS, Chief Judge.

This matter is before the Court on Defendant Moldex–Metric, Inc/s ("Moldex") motions for summary judgment of invalidity under 35 U.S.C. §§ 102, 103 and 112.

### I. *Background*

Plaintiffs 3M Company and 3M Innovative Properties Company (collectively "3M") contend that Moldex is infringing four 3M patents directed to valved respirator masks: U.S. Patent Nos. 6,854,463 ("the '463 patent") and 6,843,248 ("the '248 patent"), U.S. Reissue Patent No. RE 37,-974 ("the '974 patent") and U.S. Patent No. 7,117,868 ("the '868 patent").

The patents in suit all relate to respirator masks having exhalation valves. Respirator masks are used to prevent inhalation of particulates suspended in the air and typically employ some sort of filter that the air must pass through during inhalation.

The '463, '248 and '868 patents, also referred to as the three Japuntich patents, are related to one another through common ancestor applications, and as a result include the same patent disclosure. 3M asserts that they nonetheless claim different subject matter. In the '248 and '463 patents, the valves include a cantilevered flexible flap with a spring-like curvature which causes the flap to press against the valve in the absence of exhalation. The '868 patent uses an exhalation valve that has some means for preventing the flap from sticking to the inside surface of the valve cover (e.g. a ribbed or course ceiling).

The '974 patent, also referred to as the Bowers patent, is unrelated to the Japuntich patents. John Bowers invented this patent while working for Racal Health & Safety Ltd. Bowers was aware of the original patent in the Japuntich patent family (issued in 1994), and he was looking for a way to create a valve that would not infringe that patent. While the Japuntich patents disclose a valve with a cantilevered

flap that is curved in the longitudinal direction, the Bowers patent discloses a valve whose flap biases toward the sealing surface by bending the stationary end of the cantilevered flap in the transverse direction.

## II. Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. This burden can be met "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving parry's case." *Id.* at 325, 106 S.Ct. 2548. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995).

## III. Standard for Invalidity Pursuant to § 112

Pursuant to 35 U.S.C. § 112,

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention. The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

The policy behind this requirement is to disclose to the public one's invention; it is the *quid pro quo* for the grant of exclusivity. *LizardTech v. Earth Resource Mapping*, 433 F.3d 1373, 1375 (Fed.Cir.2006) ("*LizardTech II*"). "One should not be able to obtain a patent on what one has not disclosed to the public." *Id.*

A claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language. That is because the patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before. Placed in that context, it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation.

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed.Cir. 2005) (internal citations omitted) ("*LizardTech I*"). Where the specification fails these requirements, the patent will be deemed invalid. *Id.* For example, in *LizardTech I*, the Federal Circuit invalidated a claim in a patent because said claim described a very broad process that was not described in the specification. To further explain its decision, the Federal Circuit set forth the following analogy:

[S]uppose that an inventor created a particular fuel-efficient automobile engine and described the engine in such detail in the specification that a person of ordinary skill in the art would be able to build the engine. Although the speci-

fication would meet the requirements of section 112 with respect to a claim directed to that particular engine, it would not necessarily support a broad claim to every possible type of fuel-efficient engine, no matter how different in structure or operation from the inventor's engine. The single embodiment would support such a generic claim only if the specification would "reasonably convey to a person skilled in the art that [the inventor] had possession of the claimed subject matter at the time of filing," . . . and would "enable one of ordinary skill to practice 'the full scope of the claimed invention.'" . . . To hold otherwise would violate the Supreme Court's directive that "[i]t seems to us that nothing can be more just and fair, both to the patentee and the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent." *Id.* at 1346 (internal citations omitted).

It is Moldex's position that the specifications for the patents in suit are directed to a valve with a curved seal surface. No other seal surfaces are suggested. In addition, Moldex argues that 3M distinguished over prior art on the basis of the seal surface being curved. Moldex thus asserts that 3M is improperly attempting to expand the scope of the patents at issue, as Moldex uses a different kind of exhalation valve with a flat seal surface.

### A. Waiver of § 112 Defense

■ 3M argues that this motion should be denied, without getting to the merits, as Moldex did not raise this invalidity contention earlier in the case. 3M asserts that during discovery, it repeatedly asked Moldex to identify the specific bases for its invalidity contentions. For three of the patents in suit, the '248, '463 and '974 patents, Moldex did not raise a § 112 defense. Moldex did subsequently identify a § 112 defense with respect to the '868

patent, but did not identify the argument that the specification does not support claims that do not specify a curved seal surface. Instead, Moldex made cursory reference to other, different claim limitations. 3M asserts that failure to timely identify the asserted § 112 defense is a waiver of such defense. *See* Fed.R.Civ.P. 26(e)(1) and 37(c); *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1375–76 (Fed. Cir.2008).

Moldex responds that a § 112 defense is not ripe until the patentee tries to have its claims interpreted to include subject matter that it did not adequately disclose and the Court interprets the claim as such. Here, the Court issued its Markman Order on May 13, 2008, 552 F.Supp.2d 921, and on May 22, 2008 the parties filed a joint stipulation to amend the scheduling order. Pursuant to the amended scheduling order, the deadline to submit expert reports was August 1, 2008. On August 1, 2008, Moldex served its expert report which properly disclosed the § 112 defense. (Paunovich Declaration, Ex. B., § IV.)

Because the § 112 defense was included in Dr. Antonsson's expert report, the Court finds that 3M has not been prejudiced by a late disclosure as 3M had an adequate opportunity to respond. Accordingly, the § 112 defense has not been waived.

### B. Merits of § 112 Defense

■ To determine whether the specification demonstrates that the inventor possessed the invention and enables one of skill in the art to make and use the invention without undue experimentation, the Court must look to the original description. *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1165 (Fed.Cir.2005) (finding that where amendments were made to claims during prosecution, the

court must focus on the original disclosure in its written description analysis).

As this Court stated in its Markman Order, the Japuntich and Bowers patents sought to solve the problem that existed in the prior art wherein the flexible flaps contained within exhalation valves would fall open if the valve was tilted downward. (Markman Order (Doc. No. 455) p. 4.) The purpose of Japuntich and Bowers patents was to provide a flap that would not droop in any orientation. (*See* Paunovich Decl. (Ex. 1) at col. 2:55–60; (Ex. 4) '974 patent Abstract.)

■ With respect to the Japuntich patents, the parent application was filed in 1992 and will be referred to as to Japuntich specification. (Paunovich Decl. Ex. 11.) The '974 patent is based on a separate application, which will be referred to as to the Bowers specification. (*Id.*, Ex. 8.) The Japuntich specification, under Summary of Invention, describes the invention as one that provides "a unidirectional fluid valve that comprises a flexible flap having a first end and a second end, the first end being attached to a valve seat, the valve seat having an orifice and a seal ridge that has a concave curvature when view from a side elevation ..." (*Id.*, Ex. 11, p. 8.) The specification continues by describing a number of additional embodiments. One such embodiment describes a filtering face mask that comprises a mask body, and an exhalation valve attached to the mask body at the location of the opening, the exhalation valve having a flexible flap and a valve seat having a concave curvature. (*Id.* p. 9.) Another embodiment describes a filtering face mask that comprises a mask body, and an exhalation valve having a flexible flap and a valve seat that "includes an orifice and a seal ridge, the flexible flap being attached to the valve seat at a first end and resting upon the seal ridge when the exhalation valve is in a closed position ..." (*Id.*, p. 10.)

It is Moldex's position that viewing the written descriptions for the Japuntich and Bowers patents as a whole, together with the figures provided therein, it is clear that the inventors thought their invention was grounded in the curved valve seat—as it is that shape that prevents the flap from falling open in any orientation.

Moldex argues that throughout the prosecution of the Japuntich patents, 3M described the criticality of the curved seal surface. (Paunovich Decl. (Ex. 6) Apr. 11, 1995 Response to OA; Feb. 6 1996 and May 16, 1997 Responses to OA; June 14, 1996 Response to OA; Dec.1996.) In late 2000, however, 3M changed course by cancelling a number of claims and submitting amended claims. The new claims required a curvature when viewed from the side, but did not require that the seal surface be curved. (*Id.* July 9, 2001 Response to OA.) Moldex further asserts that to understand 3M's motivations at that time, it is important to note that during the prosecution of the patent embodied by Moldex's Ventex Valve, the patent examiner distinguished Japuntich and Bowers by noting those patents disclosed only curved valve seats. (*Id.* (Ex. 13) January 6, 2000 Response to OA.)

Moldex concedes that this Court has already determined that the prosecution histories of the Japuntich and Bowers patents do not bar 3M from arguing that the asserted claims include a curvature limitation. Moldex asserts, nonetheless, that the Court's prior Markman rulings did not address the issue here, whether the written description properly disclosed a valve seat that is not curved. Moldex argues that for claim construction purposes, the specification may not limit claims, but the fact that the shape of the seal surface is unlimited, and can thus cover any shape, means that the claims are invalid because only one of the potential shapes, one that

is curved, is described in the Japuntich and Bowers specifications. Further, any reference to the preferred embodiments is not a substitute for meeting the written description requirements in § 112. The specification must show possession of the subject matter that is allegedly covered by the broad claims.

3M responds that the Japuntich patents indicate that a curved flexible flap is an important aspect of the invention. ('248 Patent, at col. 6, line 60–col. 7, line 25.) One way the patent teaches to curve the flap is to create a bias towards the seal surface by the relative positioning of the flap retaining surface and the seal ridge. (*Id.* at col. 6, lines 45–62.) In a preferred embodiment, the seal surface is curved. (*Id.* at col. 6, lines 11–12.) The Japuntich patents do not indicate that any particular aspect or structure of the exhalation valve is critical. In fact, the Summary of the Invention discloses four aspects of the invention. While the first, second and fourth aspects disclose a valve seat with a seal ridge having a concave curvature, the third aspect puts no restriction on the shape of the seal ridge. As originally filed, the application also included four independent claims, each of which represented one of the aspects of the invention. Thus, one of the independent claims as originally filed did not place any restrictions on the shape of the seal surface. (Paunovich Decl., Ex. 11 at 25.)

With respect to the Bowers patent, 3M asserts that the inventor was trying to design an exhalation valve to compete with the Japuntich valves. He thus invented a valve in which the flexible flap is curved in the transverse direction. (Vandenburgh Decl., Ex. 10, p. 10–15.) The Summary of the Invention provides that the invention is directed to a uni-directional fluid valve that has a flexible flap mounted in cantilever fashion "wherein there is a transverse curvature to at least the said one end of the flap whereby to maintain the flap substantially seated in the absence of a pressure differential across it." (*Id.*, Ex. 11, 2:5–12.) The Summary continues by describing ways in which the transverse curve can be imparted to the flap, including manufacturing the flap to exhibit said curvature, or by shaping the valve structure in which it is mounted. (*Id.*, at 2:30–36.) In the original application, independent claim 1 reads:

1. A uni-directional fluid valve comprising a flexible flap and a cooperating valve seat surrounding an orifice adapted to pass a fluid; the flap being attached to the seat at one end, in cantilever fashion, and being adapted to flex away from other portions of the seat when fluid flows in the permitted direction; and wherein there is a transverse curvature to at least the said one end of the flap whereby to maintain the flap substantially seated in the absence of a pressure differential across it, in any orientation of the valve.

(*Id.*, Ex. 12, at 8.)

The Court finds that based on this language, there is no requirement as to the shape of the valve seat in this claim. Dependent claims 3 and 4, however, provided the means of imparting the curvature: by virtue of the mounting in the valve structure or by trapping the flap at the end of concave and convex surfaces of the first and second structural members. (Paunovich Decl., Ex. 9, at 18.) As the curved seal surface was included in a dependent claim, it is clear that the invention was not dependent on the curvature of the valve seat. 3M asserts, and the Court agrees, that because it is clear that the Bowers patent did not require a curved valve seat, summary judgment should be granted in favor of 3M on this issue.

■ · In further support of its position, 3M asserts that the Court must determine whether the "species" of exhalation valves taught in the written description in the patents in suit is sufficient to support the alleged broader "genus" type asserted claims. While the standard applicable to the written description requirement is clearly established, its application is not so clear cut. *See LizardTech II*, 433 F.3d at 1376 ("This court's written description jurisprudence has become opaque to the point of obscuring other areas of this court's law."). Generally, the law does not require disclosure of all embodiments in the specification. In the decision of *In re Rasmussen*, for example, the Court of Customs and Patent Appeals (predecessor to the Federal Circuit) was asked to consider whether describing only one method of applying adhesive was sufficient to support the broader claim language of "adheringly applying." 650 F.2d 1212, 1215 (C.C.P.A.1981). Finding that such phrase was adequately supported by the specification, the court noted that "one skilled in the art who read Rasmussen's specification would understand that it is unimportant how the layers are adhered, so long as they are adhered." *Id. See also Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1582 n. 7 (Fed. Cir.1996); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377–78 (Fed. Cir.2000).

■■ Generally, "disclosure of a species provides sufficient written description support for a later filed claim directed to the genus." *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1125 (Fed.Cir.2004). In fields that are complex and unpredictable, such as chemistry or biology, more specificity may be required where those skilled in the art may not be able to predict the operability of undisclosed species. *Id.*

If the difference between members of the group is such that the person skilled in the art would not readily discern that other members of the genus would perform similarly to the disclosed members, i.e., if the art is unpredictable, then disclosure of more species is necessary to adequately show possession of the entire genus.

*Id.*

For example, in *LizardTech I*, the technology at issue involved discrete wavelet transforms ("DWT") for the data compression of digital images. As this technology was complicated, the court rejected the patentee's attempt to claim any method of creating a seamless DWT, while disclosing only one method. 424 F.3d at 1345–46. By contrast, where the technology at issue is simple and predictable, one skilled in the art is more likely to appreciate the possession of a generic invention based on the disclosure of even a single species. *See id.* In this case, the Court finds that the field of exhalation valves is not complex. As such, disclosure of a single species of valve may be sufficient to support a more generic invention.

■ Broad claims may also be deemed invalid where "the entirety of the specification clearly indicates that the invention is of a much narrower scope." *Cooper Cameron Corp. v.· Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed.Cir.2002) (citing *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed.Cir.1998)). For example, in *Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed.Cir.1998), the Federal Circuit determined that with regard to an invention involving an artificial hip prosthesis, the fact that the patent specification at issue discussed the benefits of a conical cup over all prior art shapes, the patent claims were to be limited to the conical shape.

"[T]he only reference in the '589 patent's specification to different shapes is a recitation of the prior art. . . . Instead

of suggesting that the '589 patent encompasses additional shapes, the specification specifically distinguishes the prior art as inferior and touts the advantages of the conical shape of the '589 patent.... Such statements make clear that the '589 patent discloses *only* conical shaped cups and nothing broader." *Id.* at 1159 (emphasis in original) (internal citations omitted).

Here, the parties clearly dispute whether the patents in suit require a curved valve seat. Further, in construing the claims of the patents in suit, this Court specifically rejected the arguments raised by Moldex, that the claims must be construed to require the valve seat be curved based on the prosecution history. (*See* Markman Order [Doc. No. 455], ps. 11, 19–21 and 29–33.) Also, the Japuntich specification includes an embodiment that does not explicitly require a curved valve seat. The Court thus finds that genuine issues of material fact exist as to whether a reasonable jury could find that the Japuntich specification sufficiently disclosed that the valve seat need not be curved.

Accordingly, the Court finds that Moldex has not met its burden of demonstrating no genuine issue of material fact as to whether the Japuntich and Bowers patents meet the written specification requirements of § 112. Moldex is thus not entitled to summary judgment on the basis that the patents are invalid pursuant to § 112. The Court will grant summary judgment in favor of 3M as to the Bowers patent, however, as no reasonable jury could find that the Bowers patent requires a curved valve seat.

## IV. *Invalidity Pursuant to § 102 and § 103*

### A. Standard for Anticipation

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharm., Inc.,* 339 F.3d 1373, 1377 (Fed.Cir.2003). Further, "[a]nticipation does not require the actual creation or reduction to practice of the prior art subject matter; anticipation requires only an enabling disclosure." *Id.* at 1380.

### B. Standard for Obviousness

A patent may be deemed invalid as obvious when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. To determine whether a patent is invalid as obvious, the court should determine the scope and content of the prior art, the differences between the prior art and the claims at issue and the level of ordinary skill in the pertinent art involved. *KSR Int'l Co. v. Teleflex,* 550 U.S. 398, 127 S.Ct. 1727, 1734, 167 L.Ed.2d 705 (2007).

### C. Claim 1 of the '248 Patent
#### 1. Anticipation

Claim 1 of the '248 patent is directed to a respirator exhalation valve with a cantilevered flexible flap that is curved over the orifice to keep the flap pressed against the seal under any orientation of the exhalation valve. Moldex asserts that this claim is anticipated by the Braun prior art reference. The Braun patent relates to U.S. Patent No. 4,934,362, issued in June 1990, which is directed to "unidirectional fluid valves, especially the exhalation valve of a respirator face mask." (Paunovich Decl. (Ex. 8) at 1:6–7.) Moldex asserts that Braun discloses numerous valve configurations which expressly disclose an exhalation valve for a filtering mask that has a curved valve seat with an orifice and

a seal edge, a cantilevered flexible flap that covers and is curved over the orifice, and a bridge for mounting the top edge such that the top of the flap is fixed and the bottom is free to be lifted from the seal surface. (*Id.* 2:9–20, 2:40–46, 2:52–58, 3:44–46, 3:50–53 and 6:36–37.) Moldex further asserts that Braun discloses a measurement of an angle ("beta") at the intersection of a first line orthogonal to the outer edge of the flap and a second line orthogonal to the flap at its point of attachment. Braun teaches that the flap will stay sealed against gravity and inertia if the beta is greater than 15° and preferably between 50° and 70°.

Moldex asserts that Braun describes a first embodiment which places the bridge in the center of the orifice. A second embodiment places the bridge towards the top edge of the orifice. (*Id.* at 3:30–35.) A third embodiment moves the bridge to the very top edge of the orifice, with a single flap, the bottom edge of which is free to move. (*Id.* at 3:44–46 "The bridge to which the flap is attached can form one extremity of the orifice, with only one end of the flap being free ...".) Finally, in a fourth embodiment, Moldex argues that Braun teaches that "the flap may be two pieces with an edge of each piece attached to the bridge." (*Id.* 6:36–38.) In this configuration, while there are two flaps, each flap has a stationary end and a free end. It is Moldex's position that the third and fourth embodiments fully anticipate claim 1 of the '248 patent as each limitation of said claim is present in both embodiments.

■ 3M correctly notes that Braun was disclosed to the PTO during prosecution of the Japuntich patents, and the PTO found that none of the claims were anticipated or obvious in light of Braun. Moldex thus has a heavy burden in demonstrating invalidity. *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359 (Fed.Cir.1984). In fact, the Japun-

tich specification discusses Braun at length and provides data comparing a Braun valve to a Japuntich valve. (Paunovich Decl., Ex. 2 at 1:20–35, 13:50–14:16.) 3M asserts such data shows that the Japuntich valve was a substantial technological advance over Braun. In fact, the data shows that the Japuntich valve has a pressure drop two and a half times better than Braun's, which allows for more hot, humid, carbon dioxide rich air to be expelled with each exhalation. (Erdman Decl. ¶ 5; Cotton Decl., (Ex. B) at 36:15–38:17.) 3M also notes that this improvement created a unique and unexpected benefit called the "aspiration effect." This effect occurs when a respirator mask user breathes heavily and the valve expels more than 100 percent of the air inhaled, which creates a pleasant cooling effect for the user. (Paunovich Decl., (Ex. 2) at 4:6–19.) This effect also reduces the fogging of eyewear because less air exits the face mask through the filter media. (*Id.*)

3M further asserts that Japuntich teaches a particular curvature to the flap which will result in the valve staying closed in any orientation. Braun, however, is silent on this idea. (Erdman Decl. ¶ 4.) Rather, Braun teaches a curvature for better pressure drop by creating a larger orifice area. (Doc. No. 550 (Ex. 12) at 4, 2:28–39; Erdman Decl. ¶ 4.) Braun further teaches that the curved flap enhances pressure drop by working in concert with the inlet bell. (Doc. No. 550 (Ex. 12) at 5, 4:50–54.) Braun was thus driven by different goals to achieve different results through different means. Most importantly, Braun's curved flap does not remain closed in any orientation.

■ With respect to Moldex's position that a third and fourth embodiment described in Braun anticipates claim 1 of the '248 patent, 3M asserts that Braun does not disclose such embodiments. The as-

serted third embodiment is actually one third of a sentence, and that the remainder of said sentence actually indicates such "embodiment" is best not used in a respirator mask. (Paunovich Decl., Ex. 8 at 3:44–49.) In addition, the Braun reference does not enclose drawings for this "embodiment." In fact, Moldex's expert does not support the drawings Moldex has inserted in its brief with regard to these embodiments. As such, these arguments are nothing more than attorney-generated and conclusory depictions that are not evidence capable of supporting a finding of anticipation. *See Koito Mfg. Co., Ltd. v. Turn–Key–Tech, LLC,* 381 F.3d 1142, 1151–52 (Fed.Cir.2004.) 3M further argues the fact that Moldex had to resort to its own drawings establishes that the embodiments were not enabling—which is required to establish anticipation. *See Impax Labs., Inc. v. Aventis Pharm., Inc.,* 468 F.3d 1366, 1382 (Fed.Cir.2006).

■ While a disclosure in a prior art reference is entitled to an initial presumption of enablement where the patentee provides evidence of non-enablement that the court finds convincing, the presumption is overcome. *Id.* 3M argues that Braun does not provide enough information to enable four different embodiments of a Braun-style valve. The question of what the cited sentences from the Braun reference actually disclose is a highly material question of fact, rendering summary judgment inappropriate. *KSR Int'l Co.,* 550 U.S. at 427, 127 S.Ct. 1727.

3M further asserts that its expert, Dr. Erdman, has opined that any attempt to create a valve based on the other teachings of Braun would result in a valve that does not work. (Erdman Decl. ¶ 15, 17.) This is because the flap mounted in the way depicted in Moldex's brief is not capable of sealing, because there would be insufficient force to seal the flap at the apex of the parabola and gravity would cause the upper portion of the flap to drop. (*Id.*) Braun also teaches that such a modification should not be used in a respirator mask.

3M further asserts that the asserted embodiment 4 described by Moldex is not enabling. Rather, it is confusing and is not depicted by a drawing. Dr. Erdman opined that the cited language—"The flap may be two pieces with an edge of each piece attached to a bridge, in which event the attaching surface of the bridge may be V-shaped. In this event, the line orthogonal to the inner face of the flap at the center of the bridge may lie in the plane bisecting the V-shaped bridge surface"— does not make sense geometrically. It is unclear how two flap pieces could be connected to a V-shaped attaching surface, and also have a line orthogonal to their inner face lie in a plane that bisects the V-shape. (Erdman Decl. ¶ 19.) In fact, Moldex's expert, Dr. Antonsson, tried to draw such a configuration, but could not. (Cotton Decl., Ex. D at 230:5–237:21 and Ex. E at 2.)

Even if the alleged embodiments 3 and 4 of Braun were enabled, 3M asserts that a element by element analysis of the asserted Japuntich claims demonstrates that Braun does not anticipate. Claim 1 of the '248 patent requires that the free portion of the flap is "pressed towards the seal surface in an abutting relationship with it, under any orientation of the exhalation valve." (Paunovich Decl., Ex. 2 at 16:54–59.) Neither embodiment 3 or 4 of the Braun reference includes the limitation "under any orientation of the exhalation valve." Dr. Antonsson conceded as much when he recognized that if Braun is made in a way other than the preferred embodiment, there is a risk that the flap would not remain sealed in any orientation. (Doc. No. 597, ¶ 171 ("*Braun* also discloses that the flap stays in the closed position

under any orientation when made according to a preferred embodiment. If made in a way other than the preferred embodiment, there would be a 'risk that flap might not remain firmly seated on the valve seat against gravity and inertial acceleration.' ").)

3M further argues that claim 1 of the '248 patent requires a seal surface that circumscribes the valve's orifice. Embodiment 4 does not provide such a seal surface, however, because the bridge operates as the seal surface for a portion of the flap and the bridge spans across the orifice.

Based on the above, the Court finds that genuine issues of material fact preclude summary judgment as to whether claim 1 of the '248 patent is anticipated by Braun. Accordingly, summary judgment on this issue will be denied.

### 2. Obviousness

Moldex argues that claim 1 of the '248 patent is invalid for the additional reason that it is obvious in light of Braun and U.K. Patent Publication No. 2,072,516 ("Simpson"). Moldex asserts there is no dispute that Braun discloses every element of claim 1 other than a cantilevered flap, and that there is no dispute that Simpson discloses a cantilevered flap exhalation valve, yet Simpson was not disclosed to the PTO during the prosecution of the '248, '463 and the Bowers patents. The Simpson application provides that its flap will have leakage from sealing failure, and suggests an antechamber as a solution to this problems. (Paunovich Decl., Ex. 10 at 1:58–64.) Moldex asserts that another obvious way to solve the leakage problem is to apply the curved seal of the Braun reference. Dr. Antonsson opines that solving the leakage problem with a cantilevered flap reflects the finite number of identified, predictable solutions to such a design problem, and that such solution was within the grasp of a person of ordinary

skill in the art. (Antonsson Decl., Ex. A at 75.)

The PTO considered both Braun and Simpson during the prosecution of the '248 patent and did not find the patent obvious in light of those two references. Thus, Moldex has a heavy burden of demonstrating claim 1 of the '248 patent is invalid as obvious. *See Am. Hoist & Derrick Co.,* 725 F.2d at 1359. In light of this high burden, the Court finds that material questions of fact preclude summary judgment. First, there is a factual question as to the relevant field of art, and the definition of a person of skill in the art. Moldex has proposed a broad field of art which includes mechanical design generally and the mechanical design of one-way or check valves. 3M, on the other hand, argues the relevant field of art should be limited to the design of valves for respirator masks, and its expert, Dr. Erdman, has provided declaration testimony as to why the field should be so limited. (Erdman Decl. ¶¶ 43–49.) Questions of fact as to the definition of a person of skill in the art may amount to a material fact question precluding summary judgment. *Rowe Intern. Corp. v. Ecast Inc.,* 586 F.Supp.2d 924, 965 (N.D.Ill.2008).

Second, the parties dispute what Braun discloses. 3M asserts that Braun does not teach that curving a flap results in a flap staying sealed in any orientation. Rather, Braun's teachings as to curvature relate to increasing flow out of the valve. (Erdman Decl. ¶ 4.) Thus, a person of ordinary skill in the art would not look to Braun as providing any kind of solution to the problem associated with the Simpson reference—leakage with a cantilevered flap. Accordingly, summary judgment that claim 1 of the '248 patent is invalid as obvious will be denied. *In re Bell,* 991 F.2d 781, 784 (Fed.Cir.1993) (finding that "[w]hat a reference teaches and whether it

teaches toward or away from the claimed invention are questions of fact.") Summary judgment will also be denied for claims 19 and 31 and 34, as they are dependent from claim 1.

### D. Claims 4, 5 and 44 of the '463 Patent

Moldex asserts that these claims are essentially the same as claim 1 of the '248 patent. Thus, for the reasons stated with respect to claim 1, claims 4, 5 and 44 of the '463 patent are anticipated and/or obvious.

3M argues that for the reasons set forth with regard to claim 1 of the '248 patent, claims 4, 5 and 44 of the '463 patent are not anticipated and/or obvious. In addition, 3M asserts there is one notable difference between the '248 and the '463 patent claims. The '463 claims require that the flexible flap is pressed against the seal surface when the mask wearer is neither inhaling or exhaling. By contrast, claim 1 of the '248 patent requires that the flap stay pressed towards the seal surface in an abutting relationship with it, under any orientation of the exhalation valve. Nonetheless, like claim 1, this additional limitation in the '463 patent is not met by embodiments 3 or 4 of the Braun reference. Claims 4 and 5 of the '463 patent also require an additional limitation that embodiment 4 of the Braun reference cannot fill—that the flap be secured to the valve seat non-centrally relative to the orifice. The Braun reference, however, is secured at the center of the orifice.

Based on this record, the Court finds that factual questions preclude Moldex's motion for summary judgment as to claims 4, 5 and 44 of the '463 patent.

### E. Claims 1 and 8 of the '868 Patent

Moldex asserts that claim 1 of the '868 patent is substantially similar to claim 1 of the '248 patent, the only difference being that claim 1 of the '868 patent includes a requirement that the exhalation valve cover have an opening in the path of exhaled air and fluid impermeable ceiling with a release surface that prevents the flap from sticking to it. Moldex argues that Braun expressly discloses a cover, and that Braun further discloses that when a wearer of the face mask exhales, the composite air flow is in the direction of arrows through the openings of the cover. Moldex asserts that such a valve cover as claimed in the '868 patent would have been obvious to one of skill in the art. Further, the Morone application, published in January 1991, discloses a fuel valve with ribs protruding from the valve cover which forms a stop member for the valve flap. Moldex asserts that its expert, Dr. Antonsson, has opined that it would have been an obvious design choice to use a ribbed or course patterned ceiling to solve the problem of a flap adhering to the valve cover. (Antonsson Decl. ¶¶ 154–55.) Moldex further argues that a person of skill in the art is expected to be aware of such basic mechanical principles.

For the same reasons that claim 1 of the '248 patent is not obvious, 3M argues that claim 1 of the '868 patent is not obvious in light of Braun, Simpson and Morone. With respect to claim 8 of the '868 patent, a person of skill in the art would have had no reason to combine Braun with Simpson to obtain a valve meeting claim 8's limitations of a seal surface, with a single flexible flap with only one free portion and that the single flexible flap be curved. Braun, however, taught away from such a curved cantilevered flap, and did not teach that curving the flap would allow the flap to seal. In addition, both asserted claims of the '868 patent include additional limitations requiring a "means for" preventing the flap from adhering to the cover when moisture is present.

3M further asserts that reliance on the Morone application is improper, because the Morone reference should not be included in the relevant prior art. "Whether a prior art reference is analogous is a question of fact." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1069 (Fed.Cir.2003). A reference will be deemed analogous if it is from the same field or endeavor. *Id.* Also, the Court should consider whether similarity in the function and structure of the invention and the prior art is indicative of whether the prior art is within the inventor's field of endeavor. *Id.* "If a reference is outside of the inventor's field of endeavor, it is still analogous art if the reference 'is reasonably pertinent to the particular problem with which the inventor is involved.'" *Id.* Here, 3M argues that Morone discloses a fuel valve, whereas the relevant art is respirator valves. As fuel valves are not analogous or reasonably pertinent to problems with respirator valves, the Morone reference should not even be considered.

Lastly, 3M points out that its expert opined that Morone does not disclose a means for preventing adhesion, it discloses a stop member that prevents deformation of the valve component when the valve is under high fluid pressure. (Erdman Decl. ¶ 36.) Dr. Erdman also disagrees with Moldex's assertion that commonly known mechanical principles would have made it obvious to one skilled in the art to add a release surface to the combination of Braun and Simpson. (*Id.* ¶ 38.)

3M has demonstrated the existence of fact questions sufficient to preclude summary judgment as to the validity of claims 1 and 8 of the '868 patent. Fact questions exist as to the scope of the relevant prior art, and the parties' experts disagree as to what the Morone reference discloses. Accordingly, Moldex's motion as to these claims will be denied.

### F. Claim 15 of the '974 Patent ("Bowers")

#### 1. Anticipation

Moldex argues that claim 15 of the Bowers patent is anticipated by the Horda application, published in 1988, which discloses a valve device particularly intended for use as an exhalation and/or inhalation valve in protective masks. (Paunovich Decl. (Ex. 11) at 1:1–3.) Moldex asserts that 3M did not disclose Horda to the PTO during the prosecution of the patents in suit.

The Horda reference was discussed at length in this Court's prior Order addressing Moldex's motion for summary judgment on inequitable conduct. In that Order, this Court specifically held that the Horda reference was not material to the patentability of the Bowers patent. Further, the Court found that nothing in Horda taught or suggested an element of claim 12—namely that a transverse configuration causes the flap to seal. (Doc. No. 468 at 12.) The current arguments as to the Horda reference are essentially the same as those previously argued. Here, Moldex argues that Horda anticipates claim 15. But like claim 12, claim 15 contains a limitation requiring that the end of the cantilevered flexible flap and its respective sealing surface has a transverse configuration that causes the flap to seal. Nowhere does Horda disclose a transverse configuration, much less a transverse configuration that causes the flap to be "substantially maintained in contact with all of said sealing surfaces of the valve seat in the absence of an exhalatory pressure differential across the flap, in any orientation of the valve." (Doc. No. 596 (Ex. 5) at 7, 6:57–64.)

Based on these rulings of the Court, Moldex's motion that claim 15 of the Bowers patent is invalid as anticipated by Horda must be denied.

## 2. Obviousness

Moldex also argues that claim 15 of the Bowers patent is obvious in light of Simpson and Cover '183. Simpson discloses a valve with a cantilevered flap. Cover '183 discloses a respirator exhalation valve with a transverse configuration. (Paunovich Decl. (Ex. 9).) Moldex asserts that Cover discloses a flap that is attached to the valve seat by pins, and that the flap is pressed into the closed position by making the diameter of the flap openings made to receive the pins smaller than the diameter of the pins, which, with the transverse curve of the seal surface, forces the flap to close.

Moldex argues that Cover provides motivation to combine its transverse configuration with other prior art teachings. "[I]t is desirable to have as efficient closing action and closing registration between the [flap] and the [orifice] as possible ... [b]y the arrangement of my preferred form with the features of the concave oval base an the arrangement of the hinging means, I have accomplished a highly improved valve structure." (*Id.* at 1:13–19.) Moldex further asserts that both Simpson and Cover demonstrate not only was the motivation to keep the valve closed under any orientation something that had been considered by prior designers, but that those designers had already designed valves that did. (*See* Antonsson Decl. at 39–41 (finding that the transverse configuration is among a finite, predictable solution to such a design problem).)

3M responds that neither reference teaches a critical element of claim 15—a cantilevered flap having a transverse configuration of the flap and a seal surface at the root end that keeps the flap closed. The Court agrees. In its prior ruling on inequitable conduct, the Court found that Simpson did not disclose a cantilevered flap having a transverse configuration that keeps the flap closed. (Doc. 468 at 13.)

Dr. Erdman also opines that Simpson does not teach any structure to keep the flap closed, much less one with a transverse configuration. (Erdman Decl. 131.)

With respect to the Cover reference, the flap is attached to the valve seat by pins—not by a transverse configuration. (Paunovich Decl. (Ex. 9) at col. 2:36–45.) In addition, because the flap in Cover is centrally mounted, the flap does not have a root end and a free end at opposite ends of the longitudinal axis of the flap as required in claim 15. (*Id.* at Fig. 6.)

The Court agrees that Moldex has not met its burden of demonstrating it is entitled to judgment that claim 15 of the Bowers patent is invalid as obvious. Accordingly, summary judgment will be denied.

IT IS HEREBY ORDERED that:

1. Defendant Moldex–Metric Inc.'s Motion for Summary Judgment for Invalidity Under 35 U.S.C. § 112 [Doc. No. 488] is DENIED. Plaintiffs 3M Company and 3M Innovative Properties Company are entitled to summary judgment that the claims of the Bowers patent are not invalid for failure to meet the written description requirement of § 112.

2. Defendant Moldex–Metric Inc.'s Motion for Summary Judgment for Invalidity Under 35 U.S.C. §§ 102 and 103 [Doc. No. 592] is DENIED.