NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**ACME SCALE COMPANY, INC.,**
*Appellant*

v.

**LTS SCALE COMPANY, LLC,**
*Appellee*

_____

2014-1721

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/001,401.

_____

Decided: June 10, 2015

_____

GRANT H. PETERS, Barnes & Thornburg LLP, Chicago, IL, argued for appellant. Also represented by DANIEL P. ALBERS.

BRIJ KUMAR AGARWAL, Eckert Seamans Cherin & Mellott, LLC, Pittsburgh, PA, argued for appellee. Also represented by ROBERTA JACOBS-MEADWAY, Philadelphia, PA.

_____

Before WALLACH, TARANTO, and CHEN, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Acme Scale Company, Inc. ("Acme") appeals the decision of the Patent Trial and Appeal Board ("Board") finding claims 9, 10, and 20–22 of U.S. Patent No. 7,757,946 ("the '946 patent") unpatentable under 35 U.S.C. §§ 102(b) and 103(a).[1] *See LTS Scale Co., LLC v. Acme Scale Co.*, No. 2012-009300, 2014 WL 1692219, at *1 (P.T.A.B. Apr. 28, 2014) ("Rehearing Decision"). Because of the reasons set forth below, this court reverses and remands.

BACKGROUND

## I.   The '946 Patent

The '946 patent is titled "Material Transport In-Motion Product Dimensioning System and Method" and relates to "[m]ethods, systems, and devices to obtain dimensions of an article or product in association with material handling vehicles." '946 patent, Abstract. "A dimension detection device is installed in an enclosure and is used to acquire geometrical dimensions of the object in association with the vehicle." *Id.* In order to determine the precise dimensions, including the weight of the object, a "computer system subtracts a predetermined or recalled dimension for the material handling vehicle from the total dimension of the product and material handling vehicle to determine the dimensions of the product alone." *Id.* col. 1 ll. 62–65.

Claim 9 is illustrative and recites:

---

[1]   Section 103 has since been amended. *See* Leahy Smith America Invents Act, Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287–88 (2011) ("AIA"). However, because the application that led to the '946 patent was filed before March 16, 2013, the pre-AIA § 103(a) applies. *See* AIA, 125 Stat. at 293.

A system for actively dimensioning an article, the system comprising:

a *material handling vehicle*,

at least one active linear dimension detection device attached to a portion of the material handling vehicle, the dimension detection device positioned to move with the vehicle and to actively detect at least one linear dimension of the article when the article is loaded onto the material handling vehicle; and

a computer system in communication with at least one linear dimension detection device, the computer system being adapted to determine at least one linear dimension of the article.

*Id.* col. 6 ll. 25–37 (emphasis added to disputed claim language).

## II.  The Prior Art: Bourgoin

U.S. Patent No. 5,854,679 ("Bourgoin") "relates to a system for measuring the characteristics of an object." Bourgoin, Abstract. The system includes a scale 10, *see* Bourgoin fig. 1, reproduced below, which is equipped with a weighing platform. The user calibrates the system



FIG. 1

*Id.* fig. 1.

when it starts and positions the object to be measured on the scale platform. In one embodiment, the system "is composed of four hardware assemblies: a mechanical module which supports the other four modules and comprises a table with rollers to facilitate its displacement. The upper part is composed of a portal frame 22 supporting the two video cameras." *Id.* col. 4 ll. 13–17.

The system also includes "a processing unit [13] connected firstly to an information input device and secondly to a display device." *Id.* col. 2 ll. 24–25. The processing unit is comprised of "a system unit, a floppy disk drive, a hard disk, an image acquisition and pro-

cessing card, a connection card and a video card." *Id*. col. 2 ll. 35–38.

### III. Procedural Posture

After issuance of the '946 patent, LTS Scale Company, LLC ("LTS") filed a reexamination request with the United States Patent and Trademark Office ("PTO"). On August 15, 2011, the PTO Examiner ("Examiner") issued a decision confirming the patentability of claims 9, 10, and 20–22 of the '946 patent. LTS subsequently filed an appeal from the Examiner's decision. The appeal resulted in a May 18, 2013, Decision on Appeal, (J.A. 2–16), ("Initial Decision") by the Board reversing the Examiner's decision and thereby rejecting claims 9 and 20–22 of the '946 patent as unpatentable under 35 U.S.C. §§ 102(b) and 103(a) in light of Bourgoin individually, and Bourgoin in combination with other prior art. The Board also rejected claim 10 as obvious in light of Bourgoin in combination with other prior art.

### DISCUSSION

### I.   This Court Has Jurisdiction over Acme's Appeal

As a threshold matter, LTS argues "[t]his [c]ourt does not have jurisdiction over this Appeal because Acme failed to exhaust its right to request rehearing before the Board." Appellee's Br. 16. LTS also contends that Acme was required "to request that the Acme Patent be remanded to the reexamination Examiner to consider an amendment to the rejected claims and/or new evidence related to the claims so rejected, along with any further comments or response thereto regarding the Rehearing Decision." *Id*. (internal citations omitted).

Acme counters that it "exhausted its remedies below and it would be futile in any event to seek further review" because "[t]he Board granted the rehearing only to further interpret Bourgoin to invalidate th[e] claims [at issue]." Reply Br. 6. Therefore, Acme argues "[t]he

[Board's] decision did not change in substance or effect." *Id.* Instead, according to Acme, "the Board merely further explained the basis for its first decision." *Id.*

"The parties to an appeal to the Board may not appeal to [this court] under [37 C.F.R,] § 1.983[2] . . . until all parties' rights to request rehearing have been exhausted, at which time the decision of the Board is final and appealable by any party to the appeal to the Board."   37 C.F.R. § 41.81 (2014).

The initial appeal to the Board resulted in a decision dated May 18, 2013.  Acme subsequently filed for rehearing and the Board issued its decision on April 29, 2014. The Board stated the decision "is deemed to incorporate the [May 18, 2013 decision] reflecting [the Board's] decision for appeal."  Rehearing Decision at *6 (second alteration in original) (quoting 37 C.F.R. § 41.79(d)).  The Board also stated the "Rehearing decision is hereby designated, with respect to the facts addressed here, 'in effect, a *new decision*.'"   *Id.* (quoting 37 C.F.R. § 41.77(d)) (emphasis added).

In reversing an Examiner's determination not to make a rejection proposed by a third party requester, the "proposed rejection [] will be set forth in the decision of

---

2     37 C.F.R. § 1.983 states:

    (a) The patent owner or third party requester in an *inter partes* reexamination proceeding who is a party to an appeal to the Patent Trial and Appeal Board and who is dissatisfied with the decision of the Patent Trial and Appeal Board may, subject to § 41.81, appeal to the U.S. Court of Appeals for the Federal Circuit and may be a party to any appeal thereto taken from a reexamination decision of the Patent Trial and Appeal Board.

the [Board] as a new ground of rejection." 37 C.F.R. § 41.77(a). "Any decision which includes a new ground of rejection . . . shall not be considered final for judicial review." *Id.* § 41.77(b). When a new ground of rejection is made, the patentee, "within one month from the date of the decision, *must* exercise one of the following two options with respect to the new ground of rejection to avoid termination of the appeal proceeding as to the rejected claim." *Id.* (emphasis added). The patentee may either reopen prosecution or request rehearing.

By contrast, in a rehearing decision, as opposed to an initial appeal taken by a party, when the Board determines its decision is a "new decision," parties to the appeal "*may*, within one month of the new decision, file a further request for rehearing of the new decision." *Id.* § 41.79(d) (emphasis added). Therefore, as it did in this instance, when the Board renders its decision on rehearing as a new decision, both parties have a one month window to request a rehearing of the rehearing decision. However, the language employed by the regulation is permissive and provides a party the opportunity to pursue another rehearing should it choose to do so. Such permissive language stands in contrast to the language employed in § 41.77(b) of the same regulation, which mandates that parties *must* either reopen prosecution or request rehearing. *Id.* § 41.77(b)(1)–(2). Therefore, the PTO imposes different demands on parties who receive Board decisions containing new grounds of rejections and those who receive a Board rehearing decision deemed a "new decision." As dictated by the permissive language of the regulation, it is not incumbent on a party to seek a rehearing after the Board issues its decision on a request for rehearing that it deems a "new decision."

A different reading of the regulation as urged by LTS would engender an illogical outcome where the PTO would continuously require parties to seek further rehearings, irrespective of the fact that the Board has already

entertained the party's claim on the initial request for rehearing. Additionally, during oral arguments, counsel for LTS argued that upon the Board's rehearing decision, Acme is only entitled to pursue one of two options: 1) it may protect its appellate rights by filing another request for rehearing; or 2) "the party might decide to go home." Oral Arg. at 22:58–23:05, *available at* http://www.cafc. uscourts.gov/oral-argument-recordings/2014-1721/all. In other words, counsel for LTS asserts that a party must file a second request for rehearing to the Board or lose its appellate rights altogether whenever the Board declares its ruling on rehearing to be a "new decision." See 37 C.F.R. § 41.79(d). By entering a "new decision" when a party seeks a rehearing after an earlier rehearing decision, the Board could theoretically create a perpetual appeal rehearing cycle, thus abrogating this court's appellate jurisdiction. In effect, LTS's reading of the regulation would permit the PTO (an executive branch entity) to strip away this court's appellate jurisdiction. We think the PTO never intended such an outcome.

## II. Acme's Claims Are Properly Before this Court

LTS next argues that Acme failed to "challenge the rejections over Bourgoin *in combination with other art*, i.e., [r]ejections 3–5." Appellee's Br. 18. In its Initial Decision, in addition to its rejection of claims 9 and 20–22 under 35 U.S.C. §§ 102(b) and 103(a) as anticipated and obvious in light of Bourgoin, the Board also rejected the claims as obvious over Bourgoin in view of U.S. Patent No. 6,115,114 ("Berg"). The Board rejected claims 9 and 20 as obvious over Bourgoin in view of U.S. Patent No. 6,983,883 ("Riddling") and claim 10 as obvious over Bourgoin in view of Berg and U.S. Patent Application Publication No. 2004/0102870 ("Andersen"). LTS contends that because

> [t]hese rejections have not been challenged by Acme[,] . . . even if this [c]ourt were to grant the

> relief sought by Acme in this [a]ppeal by reversing [r]ejections 1 and 2 . . . all of claims 9–10 and 20–22 would *still* remain rejected under one or more of [r]ejections 3–5.

Appellee's Br. 18.

Acme claims that because Bourgoin does not anticipate claims 9, 10 or 20–22, "it . . . cannot be applied on its own or used in combination with other references because it does not teach that element . . . and therefore, would not be combined with other references under 35 U.S.C. § 103 in order to render the claims obvious." Reply Br. 8–9.

The three other prior art reference bases for rejection which Acme does not challenge on appeal do not rely on Bourgoin to disclose a material handling vehicle, but instead appears to combine Bourgoin with a forklift disclosed in Berg, Ridling, and Anderson. Although the Board cited these prior art references, neither the Initial nor the Rehearing Decision ground the obviousness rejections of claims 9, 10, and 20–22 on these secondary references in combination with Bourgoin. Accordingly, Bourgoin is the only reference before this court. We now address whether substantial evidence supports the Board's finding that Bourgoin discloses or teaches a material handling vehicle within the meaning of that terminology in the '946 patent.

### III. Bourgoin Does Not Anticipate Claims 9 and 20–22 of the '946 Patent Because It Does Not Disclose a Material Handling Vehicle

"During reexamination, as with original examination, the [Board] must give claims their broadest reasonable construction consistent with the specification." *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007) (citing *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004)). Thus, this court re-

views the Board's interpretation of disputed claim language to determine whether it is "reasonable." *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997). In this case, no factual findings underlie the Board's interpretation. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015) (in litigation context, only factual findings underlying claim construction call for deferential review).

"Anticipation is a question of fact reviewed for substantial evidence." *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013). A reference is anticipatory under 35 U.S.C. § 102(b) when the reference discloses each and every element of the claimed invention, whether it does so explicitly or inherently. *See Eli Lily & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1375 (Fed. Cir. 2006). Although those elements must be "arranged or combined in the same way as recited in the claims," *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008), the reference need not satisfy an *ipsissimis verbis* test, *In re Bond*, 910 F.2d 831, 832 (Fed. Cir. 1990) (citations omitted). Additionally, the reference must "enable one of ordinary skill in the art to make the invention without undue experimentation." *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008). Finally, as long as the reference discloses all of the claim limitations and enables the "subject matter that falls within the scope of the claims at issue," the reference anticipates. *Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1380–81 (Fed. Cir. 2003).

Both Acme and LTS agree Bourgoin discloses a table fitted with rollers having a system equipped with scales which serves as a dimensioning device to measure the characteristics of an object. The precise issue on reexamination and before this court on appeal is whether the broadest reasonable interpretation consistent with the specification of the term "material handling vehicle" encompasses a table with fitted rollers as disclosed in Bourgoin.

In its Rehearing Decision, the Board concluded that Bourgoin anticipates claims 9, 10, and 20–22 of the '946 patent because it "discloses a material handling vehicle." Rehearing Decision at *6. The '946 patent defines the term "material handling vehicle" to "broadly include transportation vehicles *such as*, *for example*, *but not limited to*, a fork lift truck, a flatbed truck, or a pallet truck." '946 patent col. 2 ll. 39–41 (emphasis added). In its Initial Decision, the Board concluded that "[w]hile the '946 Patent may contemplate a forklift, pallets, pallet trucks, lift trucks, and flatbed trucks, as exemplary forms of a 'material handling vehicle,' that is insufficient to imbue the term with a special meaning disassociated from its ordinary and customary meaning." Initial Decision at 11. The Board reiterated this finding in the Rehearing Decision when it found that "Acme [did] not cite to a specific definition of the term 'material handling vehicle.'" Rehearing Decision at *3.

Acme contends that "Bourgoin does not include each and every element of independent claims 9 and 20" because "[t]he table with rollers in Bourgoin is not a material handling vehicle." Appellant's Br. 16–17. Acme also argues that "[w]hile the Bourgoin table is fitted with rollers, the purpose of the 'rollers' is 'so that it can be displaced to suit the user's needs' or 'the machine may be moved in workshops or other sites.'" *Id.* at 17 (citing Bourgoin col. 3 ll. 42–43, col. 2 l. 6). Finally, Acme claims Bourgoin "teaches that one of its 'severe constraints' is that it must be protected 'against excessive vibration during transport in alleys or between different sites.'" *Id.* at 17–18 (citing Bourgoin col. 2 l. 6).

LTS asserts that absent a patentee's "'intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction representing a clear disavowal of claim scope,'" patent "claims are to be given their plain meaning and thus given the broadest reasona-

ble interpretation consistent with the specification." Appellee's Br. 23 (quoting *Am. Acad.*, 367 F.3d at 1365. LTS argues that the sentence in the '946 patent that aims to define the term material handling vehicle, "does not . . . constitute an expression of 'manifest exclusion or restriction, representing a clear disavowal of claim scope' that would demonstrate that a meaning other than the plain meaning was intended from the outset." *Id.* at 24 (quoting *Am. Acad.*,367 F.3d at 1365). Rather, because the definition employs "broad, inclusive, and non-limiting expressions like 'broadly', 'include', 'such as', 'for example', and 'but not limited to,'" the inclusion of devices such as forklifts, flatbed trucks and pallet trucks do not suggest that the '946 patent was intended to be limited strictly to these devices. *Id.*

The '946 patent's specification, in defining the term "material handling vehicle," states that it "broadly include[s] transportation vehicles such as, for example, but not limited to, a fork lift truck, a flatbed truck, or a pallet truck." '946 patent col. 2 ll. 38–41. The '946 patent identifies only commercial transportation vehicles as exemplary forms of a "material handling vehicle." Although the term "broadly" suggests the patent encompasses a wide range of devices which can be considered vehicles, the attachment of a roller to a table, without more, does not render the table a vehicle in light of the subspecies of material handling *transportation* vehicles identified in the '946 patent. The broadest reasonable construction of the term "material handling vehicle" is limited to a device that is capable of moving and whose function is to transport the material to be measured.

Bourgoin satisfies the first aspect of this definition; when equipped with rollers, it is capable of movement. However, unlike the dimension detection device in the '946 patent, the device in Bourgoin was not intended to be "positioned to move with the vehicle." *Id.* col. 6 ll. 14–15.

Bourgoin urges users to protect "against excessive vibration during the transport[ation] [of the table] in alleys or between different sites," thus suggesting it is not intended for transport. Bourgoin col. 2 ll. 7–8. The inclusion of rollers makes movement easier (the table need not be lifted); and the movement can take place with items on the table. However, it stretches the bounds of any reasonable interpretation to say that, by virtue of those facts, the table is a "vehicle."

If this court were to adopt the Board's interpretation, any object capable of holding items and made more easily movable by attachment of rollers, would constitute a vehicle, irrespective of the fact that the object is primarily intended to be stationary. Such a reading would render the claim language of the '946 patent overly broad. Therefore, even under the most expansive construction rubric, such an interpretation is unreasonable and inconsistent with the specification of the '946 patent.

### IV. Because Bourgoin Does Not Teach or Suggest a Material Handling Vehicle, Claims 9 and 20–22 of the '946 Patent Are Not Obvious

In addition to the Board's rejection of claims 9 and 20–22 as anticipated by Bourgoin, the Board also rejected the claims under 35 U.S.C. § 103(a) as obvious over Bourgoin. An obviousness rejection may be challenged "by showing that the Board reached an incorrect conclusion . . . or that the Board based its obviousness determination on incorrect factual predicates." *In re Rouffett*, 149 F.3d 1350, 1355 (Fed. Cir. 1998).

This court reviews the ultimate determination of obviousness as a question of law based on relevant factual findings. *In re Mouttet*, 686 F.3d 1322, 1330 (Fed. Cir. 2012) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007); *In re Gartside*, 203 F.3d 1305, 1316, 1319, (Fed. Cir. 2000)). This court reviews the Board's determination of obviousness de novo and its factual findings for

substantial evidence. *Gartside*, 203 F.3d at 1316. "The factual predicates underlying an obviousness determination include the scope and content of the prior art, the differences between the prior art and the claimed invention and the level of ordinary skill in the art." *Rouffett*, 149 F.3d at 1355. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

In its Initial Decision, the Board addressed only Acme's anticipation arguments and thereby limited the discussion to whether, "[u]nder § 102, [] Bourgoin disclose[s] a material handling vehicle[.]" Initial Decision at 5. In the Rehearing Decision, the Board acknowledged that the classification of Acme's contentions solely under section 102 was "too narrowly stated," Rehearing Decision at *2, and subsequently modified the issue on appeal to incorporate Acme's § 103 arguments that Bourgoin does not provide a "'primary foundational reference under 35 U.S.C. § 103 either alone, or in combination' with the secondary references." *Id.* (internal citation omitted). Accordingly, during the Rehearing Decision, the Board modified the issue to whether "*Bourgoin discloses that its table is a material handling vehicle and alternatively suggests and teaches that its table can be used as a material handling vehicle.*" *Id.*

Although the Board sought to bisect the anticipation and obviousness inquiries during the Rehearing Decision, it failed to do so. The Board's sole effort to address Acme's § 103 arguments was a conclusory statement made at the end of the Rehearing Decision stating that "one of ordinary skill in the art would have viewed Bourgoin as teaching or suggesting that Bourgoin's table with rollers could be used to transport the package or object 23 from one location to another location, thereby using it as a material handling vehicle." *Id.* at *6.

In addition to this court's finding that Bourgoin does not disclose a material handling vehicle, we also find that a skilled artisan would *not* have viewed Bourgoin as teaching or suggesting that a table fitted with rollers could be used as a material handling vehicle. Bourgoin states that the "system may be placed on a table fitted with rollers." Bourgoin col. 2 ll. 37–38. Nothing in Bourgoin lends support to the idea that the fitted rollers are intended to aid the table in functioning as a mechanism capable of transporting an object from one location to another. Rather, the patent clearly expresses that the rollers are merely an option available to a user who decides that the table needs to be relocated.

Bourgoin discloses that the primary utility served by the rollers is to allow the table to be "displaced to suit the user's needs." *Id.* col. 3 l. 43. It appears the primary function served by the rollers is to reduce the effort exerted by the user when moving the device from one location to another. Therefore, the table itself does not function as the device that transports. Instead, when fitted with rollers, it is the device *being transported* as opposed to the device *doing* the transporting. However, the ability to move a device primarily intended to be stationary does not transform an object into a vehicle. Any alternative reading is illogical. There is no difference between fitting rollers to a table in order to aid movement and fitting such rollers to other heavy objects such as a piano or ping pong table to relocate the object according to the user's needs. Classifying the aforementioned objects as vehicles simply because the rollers have rendered them capable of movement is unreasonable.

CONCLUSION

For the foregoing reasons, the PTO's decision is

**REVERSED AND REMANDED**